**STATE STREET BANK, Appellee,**

v.

**Charles V. PETREY and Elizabeth Petrey, Appellants.**

**Appeal of: Dr. Amrit Lal.**

Superior Court of Pennsylvania.

Submitted March 18, 2002.
Filed March 11, 2003.

the parties' agreement for the judge's consideration.

Thomas G. Wolpert, West Chester, for appellant.

Lisa D. Blankenburg, Kristina G. Gandolfo and Michael T. McKeever, Philadelphia, for appellee.

BEFORE: STEVENS, OLSZEWSKI, and KELLY, JJ.

OPINION BY STEVENS, J.:

¶ 1 This is an appeal from the order of the Court of Common Pleas of Chester County denying Appellant Amrit Lal's exceptions to a Sheriff's schedule of proposed distributions following a foreclosure sale. For the following reasons, we reverse and remand.

¶ 2 State Street Bank & Trust ("State Street") brought a mortgage foreclosure action on July 6, 1999 against property owned at the time by mortgagors Charles and Elizabeth Petrey ("Petreys"). State Street stood as assignee of a mortgage originally entered into by the Petreys and United States Mortgage Corporation on October 30, 1979, in the amount of $30,000.00 at 11.5% interest per annum. According to State Street's complaint, the mortgage was in default because monthly payments of principal and interest due February 1, 1999, and each month thereafter were unpaid, prompting accelerated payment of the entire principal balance and all interest still owing. State Street provided a statement of accounting of the outstanding amounts as follows:

| | |
|---|---|
| Principal Balance | $ 27,989.26 |
| Interest from 1/1/99 through 5/31/99 at 11.500% | $ 1,323.00 |
| Additional Interest due HUD | $ 6,290.35 |
| Attorney's Fee at 5% of Principal Balance | $ 1,399.46 |
| Late Charges 2/1/99—5/31/99 | $ 86.16 |
| Costs of suit and Title Search | $ 560.00 |
| | $ 37,648.23 |
| Escrow Balance Deficit | $ 280.53 |
| | $ 37,928.76 |

¶ 3 On December 30, 1999, State Street filed a Praecipe for Judgment, wherein it amended its statement of damages to reflect increases of nearly three thousand dollars in interest, and of over four thousand dollars in escrow balance deficits as of the April 20, 2000 scheduled date of Sheriff's Sale. Accordingly, a default judgment was entered in favor of State Street equaling the claimed $45,296.25 that would be owing on the sale date.

¶ 4 As a judgment creditor of record with respect to the property in question, Appellant, Dr. Amrit Lal, received notice of the pending Sheriff's Sale. In response, Dr. Lal filed a "Petition of Third Party in Interest to Intervene" alleging that he had priority over State Street because he had revived his judgment lien against the Petreys months before State Street obtained its default judgment. Dr. Lal also sought an accounting of the Petrey's mortgage arrearages and of other charges that would affect the upcoming schedule of distribution.

¶ 5 State Street filed a response asserting that it, and not Dr. Lal, enjoyed priority in distribution of proceeds under the Lien Priority Law, 42 Pa.C.S. § 8141(2), because the purchase money mortgage it held predated Dr. Lal's judgment lien by nearly two years. State Street also denied the existence of any "right" of Dr. Lal to demand an accounting until after the sale, through exceptions filed pursuant to Pa. R.C.P. § 3136.

¶ 6 Dr. Lal's Petition to Intervene remained unresolved as of April 20, 2000, when he filed a "Motion to Stay Sheriff's Sale" that reiterated his assertions of priority and right to an accounting. That same day, the Honorable Jacqueline C. Cody conducted a hearing on the matter and denied Dr. Lal's petition and motion. The Sheriff's Sale commenced immediately thereafter with State Street holding its selling lien of $45,296.25 on property with an alleged appraised value of approximately $32,000.00. Dr. Lal attended the sale and bid on the property until it reached what he contends was the appraised value, but ceased when State Street increased the bid to $35,000.00, which became the purchase amount.

¶ 7 Following the sale, the Sheriff filed an amended proposed schedule of distribution of proceeds, which showed $31,677.03 in proceeds available to be applied toward the selling lien after costs, taxes, and utilities were accounted. However, State Street's $45,296.25 selling lien more than offset the available proceeds of sale, leaving a $13,619.22 deficiency as the schedule's final figure.

¶ 8 Thus due to receive nothing under this schedule, Dr. Lal filed Pa.R.C.P § 3136 [1] exceptions to the proposed distribution, in which he argued that State Street must substantiate its selling lien amount with a particularized accounting lest the schedule of distributions unjustly enrich State Street at the expense of remaining parties in interest. State Street opposed the exceptions by denying Dr. Lal's standing to attack the judgment amount, and by refuting the existence of a Rule 3136 remedy where there are no proceeds of sale to distribute. After a September 22, 2000 hearing, the trial court denied the exceptions under Rule 3136, ruling that Dr. Lal had no standing to challenge the judgment that was ultimately entered as the selling lien amount in the schedule of distributions calculations. The court also refused to consider Dr. Lal's petition under principles of equity, stating that equity did not apply to the present matter. This timely appeal followed.

¶ 9 In his appeal, Dr. Lal's "Questions Presented" coalesce to ask whether he, as a junior lienholder, was entitled under either equity or statute to a proof of State Street's selling lien amount that left the schedule of distributions with a negative balance to the detriment of Dr. Lal's interest. We agree with Dr. Lal that he was so entitled.

■■■ ¶ 10 We first note that the order appealed from is a final order and is, therefore, appealable. *Mid–State Bank v. Globalnet Intern., Inc.*, 710 A.2d 1187 (Pa.Super.1998) (noting that Rule 3136's authorization of the Sheriff to invest the proceeds "pending final disposition of the exceptions or an appeal therefrom" implicitly recognizes the right of appeal by a person aggrieved by the court's disposition of exceptions).

---

1. Rule 3136 provides, in pertinent part:
   . . .
   (d) The Sheriff shall distribute the proceeds of sale in accordance with the proposed schedule of distribution, unless written exceptions are filed with the Sheriff not later than ten (10) days after the filing of the proposed schedule.
   (e) Upon the filing of exceptions, the Sheriff shall transmit them to the prothonotary together with a copy of the proposed schedule of distribution.
   (f) The court shall determine the exceptions, and for this purpose may receive evidence by deposition or otherwise, or may appoint an auditor to hear the evidence and report to the court.
   . . .
   Pa.R.C.P. § 3136.

¶ 11 Where exceptions to the distribution of proceeds of a foreclosure sale are filed, a court will hear and determine them according to law and equity. *Extraco Mortg. v. Williams,* 805 A.2d 543 (Pa.Super.2002).[2] Our standard of review with respect to the action of a chancellor in equity is limited. We will reverse only where the trial court was "palpably erroneous, misapplied the law or committed a manifest abuse of discretion." *Thermo–Guard Inc. v. Cochran,* 408 Pa.Super. 54, 596 A.2d 188, 193 (1991). Where there are any reasonable grounds for the trial court's decision, we must affirm it. *Id.*

¶ 12 Because Dr. Lal's exceptions went to the fairness and accuracy of the proposed distribution schedule, it is only equitable to have required that State Street justify to a party-in-interest the amount of the schedule's "selling lien" entry that left $0.00 available for distribution. State Street contends that Dr. Lal may obtain no relief from exceptions that call for review of a lien amount already reduced to judgment. Yet, this Court has relied on principles of equity and fairness to find that a schedule of distribution was not bound to incorporate an earlier default judgment amount where that amount was no longer reflective of the priority lienholder's actual damages and where the junior lienholder's interests were not unduly harmed. *See Extraco,* 805 A.2d at 545. We would apply the same principles of equity to require a showing that the judgment amount here was, in fact, reflective of the priority creditor/purchaser's actual interest at the time the amount was factored in the calculations affecting the schedule of distribution.

¶ 13 Moreover, this Court has recognized that Rule 3136 provides an exception to the distribution process, exercised by Dr. Lal herein, requiring a priority creditor to justify the legitimacy of its claimed distributions in order to safeguard the rights of junior creditors. *See Extraco,* 805 A.2d at 546. State Street argues that Rule 3136 applies only where there exist sale proceeds available for distribution, but the rule's obvious aim of protecting junior creditors against undue depletion of their interests would not be served were we to agree. We can discern no purpose in the rule to speak against unfair diminution of proceeds but to remain silent when proceeds are unfairly eliminated altogether. Both instances involve the inequitable appropriation of junior creditor interests, and, as such, both come under the aegis of Rule 3136. Therefore, even where a schedule of proposed distribution lists $0.00 available for distribution, a junior creditor may invoke Rule 3136 to require the priority creditor/purchaser to account for precisely how that $0.00 figure was reached.

¶ 14 Here, the record shows that the judgment amount factored into the schedule of distributions as State Street's "selling lien" was not substantiated by sufficient evidence to satisfy Rule 3136. During foreclosure proceedings, State Street submitted a statement of its damages (*see supra*) in relation to the Petrey's property, but, apparently, the uncontested nature of those proceedings enabled State Street to prevail on those numbers without offering documentation to support the amounts declared in the statement. Given the peculiarities of the present case, more in the way of evidence was needed in response to Dr. Lal's challenge.

**2.** Accordingly, the trial court erred in deeming equitable principles irrelevant to the matter at issue.

¶ 15 For example, State Street's statement offers that a $30,000.00 mortgage originating in 1979 still had $27,989.26 principal twenty years later despite the absence of the Petrey's default until February of 1999. While there are any number of ways how the current principal balance may reflect intervening lending transactions between the Petreys and State Street's predecessors, the record simply does not explain how. Instead, the principal amount appears on several filings of record as a bare assertion.

¶ 16 Also, Dr. Lal presents exhibits showing that as of May, 1999, no delinquent taxes existed on the subject property. Yet, in State Street's December, 1999 accounting, an over four thousand dollar "escrow balance deficit" was entered. We do not deny the possibility that a property with an alleged appraised value of $30,0000 could accrue $4,000.00 in tax and insurance arrearages in less than a year, but Dr. Lal's challenge to this somewhat considerable figure—if the appraised value is accurate—merits an answer.

¶ 17 Finally, we note that Dr. Lal has demonstrated a reasonable likelihood that he will have been harmed if State Street's selling lien was inflated. It is undisputed that Dr. Lal attended the Sheriff's Sale and bid to purchase the property at $30,000.00, pressing State Street to its ultimate purchase price of $35,000.00. After property taxes, costs, and utilities were satisfied, over $31,000.00 remained for distribution to the two creditors at bar. If less than this amount were actually owing to State Street from the twenty-year old $30,000.00 mortgage, then Dr. Lal would have stood to receive something in the distribution.

¶ 18 We find, therefore, that the trial court improperly dismissed Dr. Lal's exceptions without reviewing them on the merits. Dr. Lal has the right as a creditor to ensure that the schedule of distribution has not factored an inaccurate selling lien amount in excess of the priority creditor's actual interest in the property. His diligent petition to intervene in the foreclosure case itself to compel an accounting already denied, Dr. Lal had little recourse remaining but the mechanism under Rule 3136 requiring priority creditors to justify the legitimacy of their claims in a schedule of distributions. Accordingly, we must remand this case to the trial court for proceedings consistent with this decision.

¶ 19 Reversed and Remanded. Jurisdiction relinquished